UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASUBHAI K. DESAI,

     Petitioner,                              Civil Action No. 2:05-cv-74243

v.                                           HON. MARIANNE O. BATTANI

RAYMOND BOOKER,

     Respondent.
_____/

**OPINION AND ORDER CONDITIONALLY GRANTING
PETITIONER'S AMENDED PETITION FOR A WRIT OF HABEAS CORPUS**

## I.    INTRODUCTION

This matter is before the Court on Petitioner Jasubhai K. Desai amended petition for a writ of habeas corpus in which he challenges the constitutionality of his 2001 first-degree-murder conviction. Petitioner's conviction occurred in the Third Circuit Court in Wayne County, Michigan, following a four-day jury trial. He is presently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan, serving a life sentence for that conviction.

Petitioner's conviction stems from the 1983 death of Ann Marie Turetzky. In 1995, he was charged, along with Stephen Adams, with her murder. Petitioner and Adams were tried jointly but with separate juries. Adams allegedly confessed to an acquaintance that Petitioner hired him to murder Turetzky. Adams exercised his right under the Fifth Amendment and did not testify at trial. However, the trial court allowed the testimony of the acquaintance to be heard by the jury. Adams's jury was unable to reach a verdict and the prosecution dismissed all murder charges against him in exchange for his no-contest plea in an unrelated case, which resulted in a ten-month country jail sentence.

Petitioner filed a direct appeal with the Michigan Court of Appeals challenging, among other things, the admission and use of Adams's alleged hearsay confession under the Confrontation Clause.  In affirming his conviction, the Court of Appeals rejected his claim and reached its decision by employing an *Ohio v. Roberts*, 448 U.S. 56 (1980), test for the reliability of hearsay.  *People v. Desai*, No. 238210, 2003 WL 22515292 (Mich. Ct. App. Nov. 6, 2003).

In reviewing Petitioner's original habeas petition, this Court came to a contrary conclusion and ordered the State to release him from custody or grant him a new trial. *Desai v. Booker*, No. 05-74243, 2007 WL 1343718 (E.D. Mich. May 8, 2007).  The United States Court of Appeals for the Sixth Circuit reversed the Court's decision and remanded the matter, leaving open the option for Petitioner to return to state court to exhaust the argument that the introduction of Adams's alleged hearsay statement violated his rights under the Due Process Clause.  *Desai v. Booker*, 538 F.3d 424 (6th Cir. 2008).

After the Sixth Circuit's remand, this Court provided Petitioner with the opportunity to return to the state courts to exhaust his claim.  Petitioner has exhausted his Due Process Clause claim in the state courts and has now returned to the Court with this amended habeas petition.

In his amended habeas petition, in addition to his Due Process Clause claim, Petitioner raises claims concerning his right to present a defense, the twelve-year delay in charging him with the Turetzky murder, the cumulative effect of the state trial court's errors, and whether the standard under section 2254(D) precludes habeas relief and should be adjudged unconstitutional.

For the reasons set forth below, the Court conditionally grants Petitioner habeas

2

relief with respect to his Due Process Clause claim and denies relief with respect to the remaining claims.

## II.    BACKGROUND

This case has been in the courts, both state and federal, since 1995. The facts are extensive and the procedural posture quite lengthy. However, the Court finds the following substantive and procedural facts pertinent to the case and worth repeating.[1]

On November 7, 1983, a Woodhaven, Michigan, police officer found Turetzky's body in the front seat of a car parked in a hotel parking lot. The medical examiner determined that she had been manually strangled.

In 1970, Turetzky worked with Petitioner as a nurse at his medical clinic. In 1976, the two formed a partnership to build a walk-in clinic in Trenton, Michigan. Codefendant Adams worked for Petitioner and Turetzky.

In 1982, Petitioner and Turetzky opened another clinic in Monroe, Michigan. However, their relationship was strained. In order to limit the tension and friction, Turetzky worked at the Trenton clinic and Petitioner worked at the Monroe clinic. Despite the arrangement, they were unable to resolve their conflicts.

When Turetzky's body was found, the police noted that there were scratches underneath her eyes, marks under her chin and on her hands, bruising on her neck, and

---

[1]   This Court adopts the substantive and procedural statements of facts from Petitioner's case as recited in its original opinion and order granting habeas relief. *Desai*, 2007 WL 1343718, at *1-7. Those facts were essentially adopted by the Sixth Circuit in its opinion as well. *Desai,* 538 F.3d at 425-27. The Court also adopts the facts as stated by the trial court, in denying Petitioner's motion for relief from judgment. *People v. Desai*, No. 95-007158, at 1-6 (Third Cir. Ct. Wayne Cnty. Sept. 7, 2009). All of these facts are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1).

dried blood on her mouth. They also noted that her jewelry remained intact and her purse was located on the center console, with the contents strewn on the floor of the vehicle. The police, however, failed to obtain photographs of the crime scene, generate sketches, preserve trace evidence, interview motel patrons, or save the belongings scattered in the vehicle. In essence, no significant evidence was preserved from the scene. Thus, without any elementary evidence, the police were unable to specifically target a suspect for the murder.

The Turetzky family then offered a reward to anyone with information about the murder. Turetzky's son, John, believed that Petitioner killed his mother. He went to the clinic where Petitioner worked and, brandishing a gun and firing two shots, attempted to coerce an admission of guilt from him. Despite the threat, Petitioner denied having any connection to her death.

After months of investigating, the prosecutor's office concluded there was not enough evidence to charge either Petitioner or Adams. One fact that weighed heavily against charging them was that Adams passed a polygraph examination denying any involvement in the murder.

Then, in 1988, the police and the prosecution learned that Adams allegedly confessed to the killing to a man named Lawrence Gorski. Gorski, who was a possible suspect in the murder himself, told the police that, approximately six weeks after the murder, Adams told him that he murdered Turetzky. The alleged confession took place between two toilet stalls inside the men's bathroom of a bar. While a band was playing at the location, Adams approached Gorski and requested that they meet in the men's bathroom. Adams and Gorski were acquaintances. As a result of that acquaintance,

4

Gorski knew about the clinic's cash business. At one time, Gorski even attempted to steal cash from Petitioner.

In 1995, Gorski testified in state grand jury proceedings. Subsequently, Petitioner and Adams were charged with Turetzky's murder. Adams and Petitioner were charged on the theory that Petitioner had hired Adams to kill Turetzky in order to become the sole owner of the businesses.

For the next six years, the case went back and forth and to and from the trial court and the state appellate courts. After the prosecution filed charges against Petitioner in 1995, Petitioner moved to dismiss those charges on the ground that he had suffered enormous prejudice as a result of the charging delay. On March 21, 1997, the trial court dismissed the charges against him, finding that the prosecution had intentionally delayed the investigation in order to gain a tactical advantage. See Ruling of Court, Mar. 21, 1997, ECF No. 33. The prosecution appealed and the Michigan Court of Appeals reversed the decision, finding that the delay was for investigatory rather than tactical purposes. *People v. Adams*, 591 N.W.2d 44 (Mich. Ct. App. 1998). The Michigan Supreme Court denied Petitioner's application for leave to appeal on November 2, 1999. *People v. Desai*, 603 N.W.2d 783 (Mich. 1999) (Table). On October 2, 2000, the United States Supreme Court denied his petition for a writ of certiorari. *Desai v. Michigan*, 531 U.S. 811 (2000).

Finally, in September 2001, eighteen years after the murder, Petitioner and Adams were tried for the Turetzky murder. The prosecution's theory remained the same; Petitioner hired Adams to kill Turetzky in order to gain sole ownership of the clinics.

Adams invoked his Fifth Amendment right not to testify, but his alleged hearsay, bathroom-stall confession to Gorski was admitted under the statement against penal

5

interest hearsay exception, over defense counsel's objections. At trial, Gorski testified that Adams, who had a hearing problem, spoke through a tiny crack separating the stall divider and the bathroom wall. Adams allegedly admitted to Gorski that he, with his own hands and a necktie, strangled Turetzky to death after Petitioner paid him to do so. Gorski also testified that he and Adams together committed crimes in the past. He acknowledged that Adams may have been drinking and using cocaine when the alleged confession took place. He said Adams was a known drug addict with a criminal history.

Gorski's testimony was the only direct evidence against Petitioner and, because Adams invoked his Fifth Amendment right not to testify, Petitioner was unable to counter Gorski's account of Adams's alleged confession with Adams's testimony.

As described, after four days of deliberating, Petitioner's jury found him guilty of the murder, while Adams's jury was unable to reach a verdict. Eventually, the prosecution dismissed all murder charges against Adams in exchange for a no-contest plea in an unrelated case. Adams was sentenced to the county jail for ten months.

The state appellate courts affirmed Petitioner's conviction on appeal. *Desai*, 2003 WL 22515292, at *8; *People v. Desai*, 685 N.W.2d 669 (Mich. 2004) (Table).

On November 4, 2005, Petitioner filed his first habeas petition with this Court, raising the same claims raised in this amended habeas petition, minus the Due Process Clause and cumulative-error claims. The Court granted a conditional writ, after determining that Petitioner's Confrontation Clause claim warranted habeas relief, *Desai*, 2007 WL 1343718, at *17, but the Sixth Circuit reversed the Court's decision, *Desai*, 538 F.3d at 431. Although the Sixth Circuit disagreed with the Court's resolution of the Confrontation Clause claim, it held that Petitioner could attempt to obtain relief for challenging the admission of Adams's

6

alleged hearsay confession under the Fourteenth Amendment's Due Process Clause. The Sixth Circuit stated:

> While we disagree with the district court's resolution of this issue, that still leaves Desai the option of renewing his other habeas challenges on remand. He also has raised the argument that the introduction of Adams'[s] non-testimonial hearsay statement violates due process, a theory he has yet to exhaust in state court. Because Desai had *no reason* to raise this claim at his criminal trial or in the Michigan court of appeals in view of the existing *Roberts* doctrine, the district court may wish to give him an opportunity to exhaust that claim in the state courts now.

*Id.* at 431 (emphasis added). On remand, the Court afforded Petitioner an opportunity to exhaust his Due Process Clause claim in the state courts and stayed the case. See *Desai v. Booker*, No. 05-74243 (E.D. Mich. Feb. 24, 2009), ECF No. 103.

Subsequently, Petitioner filed a motion for relief from judgment with the state trial court, under Michigan's court rule 6.502, raising the precise Due Process Clause issue left open to him by this Court and the Sixth Circuit.

The trial court held a hearing on May 29, 2009, and, on September 7, 2009, it granted Petitioner's motion, finding that the admission of Adams's alleged confession was hearsay evidence that "was not Constitutionally reliable and its use secured [Petitioner's] conviction in violation of his rights under the Due Process Clause." *Desai*, No. 95-007158, at 15. The trial court found that Petitioner satisfied the "good cause" and "actual prejudice" requirements set forth in Michigan's court rule 6.508(D)(3). *Id.* at 16. The court explained that Petitioner had "good cause" for not raising a Due Process Clause challenge on direct appeal because at the time of his direct appeal reliability arguments relating to hearsay evidence were brought under the Confrontation Clause. *Id.* at 8-9. The court further recognized that the Sixth Circuit had authorized Petitioner to raise his Due Process Clause

7

challenge in the state court and that it would be at odds with the Sixth Circuit's ruling to bar Petitioner from raising the claim.  *Id.* at 9.

The prosecution appealed the matter to the Michigan Court of Appeals, which reversed the trial court's decision.  *People v. Desai*, No. 294287, 2010 WL 3385988 (Mich. Ct. App. Aug. 24, 2010).  Although citing Michigan's court rule 6.508(D)(3) as a reason for rejecting Petitioner's Due Process Clause claim, the Court of Appeals still went on to discuss the merits of the claim and denied relief accordingly.  Petitioner then filed an application for leave to appeal that decision with the Michigan Supreme Court, which was denied "because we are not persuaded that the questions presented should be reviewed by this Court."  *People v. Desai*, 803 N.W.2d 323 (Mich. 2011) (Table).  The Michigan Supreme Court never mentioned Michigan's court rule 6.508(D)(3) as a procedural bar to review.

On March 9, 2012, Petitioner filed this amended habeas petition.  The Court held a hearing in this matter on May 15, 2012.

## III.    DISCUSSION

### A.    Procedural Default Regarding Due Process Clause Claim

Respondent argues that Petitioner's Due Process Clause claim is procedurally defaulted because it was not raised in his direct appeal but was raised for the first time in his motion for relief from judgment filed with the state trial court. Respondent adds that Petitioner also failed to satisfy the "good cause" and "actual prejudice" standard articulated in M.C.R. 6.508(D)(3) in order to overcome the default.  These arguments do not prevent the Court from reviewing the merits of Petitioner's claim.

Procedural default is excused where a petitioner can demonstrate "cause for the

8

default and prejudice" as a result of the alleged violation of federal law, or "that failure to consider the federal claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (internal quotation marks and citations omitted); *see also Engle v. Isaac*, 456 U.S. 107, 135 (1982) (holding that the "terms 'cause' and 'actual prejudice' are not rigid concepts . . . [and] those principles must yield to the imperative of correcting a fundamentally unjust incarceration") (citing *Wainwright v. Sykes*, 433 U.S. 72, 91 (1977)).   The Michigan Court of Appeals has acknowledged that federal court interpretations and decisions on the habeas corpus statute provide the underpinnings for the "cause" and "actual prejudice" requirements. *Desai*, 2010 WL 3385988, at *3 (citing *People v. Reed*, 535 N.W.2d 496, 499 (Mich. 1995)).   Accordingly, Petitioner's Due Process Clause claim is not cognizable in this habeas proceeding unless he can establish "cause" and "actual prejudice" or show that the Court's failure to review this claim will result in a "fundamental miscarriage of justice."   The Court begins its analysis with the cause and actual prejudice issues.

   1. **Cause**

  As noted above, the United States Supreme Court in *Coleman* stated that when the state court relies on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates "cause for the default and prejudice" as a result of the alleged violation of federal law.   *Coleman*, 501 U.S. at 750; *see also Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (same).   Cause is defined as "something *external* to the petitioner, something that cannot fairly be attributed to him" that impedes his efforts to comply with the State's procedural rule.   *Coleman*, 501 U.S. at 753 (emphasis in original) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).   Cause factors

9

include, *inter alia*, "a showing that the factual or legal basis for the claim was not reasonably available to counsel . . . ." *Murray*, 477 U.S. at 488 (citations omitted); *see also McClesky v. Zant*, 499 U.S. 467, 493 (1991) (same). If a petitioner fails to demonstrate cause, the Court need not consider whether there is actual prejudice. *Smith v. Murray*, 477 U.S. 527, 533 (1986) (citations omitted).

In regards to the issue of whether a constitutional claim was reasonably available to counsel, the United States Supreme Court has explained:

> [T]he cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests. And the failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the requirement is met. If counsel has no reasonable basis upon which to formulate a constitutional question, setting aside for the moment exactly what is meant by "reasonable basis," it is safe to assume that he is sufficiently unaware of the question's latent existence that we cannot attribute to him strategic motives of any sort.
>
> Counsel's failure to raise a claim for which there was no reasonable basis in existing law does not seriously implicate any of the concerns that might otherwise require deference to a State's procedural bar. Just as it is reasonable to assume that a competent lawyer will fail to perceive the possibility of raising such a claim, it is also reasonable to assume that a court will similarly fail to appreciate the claim. It is in the nature of our legal system that legal concepts, including constitutional concepts, develop slowly, finding partial acceptance in some courts while meeting rejection in others. Despite the fact that a constitutional concept may ultimately enjoy general acceptance . . . , when the concept is in its embryonic stage, it will, by hypothesis, be rejected by most courts. Consequently, a rule requiring a defendant to raise a truly novel issue is not likely to serve any functional purpose. Although there is a remote possibility that a given state court will be the first to discover a latent constitutional issue and to order redress if the issue is properly raised, it is far more likely that the court will fail to appreciate the claim and reject it out of hand. Raising such a claim in state court, therefore, would not promote either the fairness or the efficiency of the state criminal justice system.

*Reed v. Ross*, 468 U. S. 1, 14-15 (1984).

10

To satisfy his cause burden, Petitioner argues as follows. At the time of his direct appeal, the uniform practice was to raise issues related to the reliability of hearsay evidence under the Confrontation Clause instead of the Due Process Clause. That was the practice sanctioned by the Supreme Court in *Roberts* and was the subject of myriad decisions by the Supreme Court and other federal courts for more than twenty years. Although the Due Process Clause had always served as a general protection against conviction upon unreliable evidence, *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (reliability is the "linchpin" of due process analysis), *Roberts* and its progeny taught that if the reliability problem related to hearsay evidence, then the defendant should raise a Confrontation Clause claim.

In this case, it was not until *after* Petitioner's direct appeal that the Supreme Court significantly changed the constitutional analysis of hearsay. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Court held that the Confrontation Clause bars the admission of testimonial hearsay no matter how reliable it may be. Then, in *Davis v. Washington*, 547 U.S. 813 (2006), the Court held that the Confrontation Clause does not bar the admission of, and does not apply to, nontestimonial hearsay. Thus, *Crawford* and *Davis*, together, changed the landscape with respect to Confrontation Clause doctrine. *Miller v. Stovall*, 608 F.3d 913, 928 (6th Cir. 2010). Therefore, Petitioner explains, he had no reason to raise anything but a Confrontation Clause challenge to admission of Adam's alleged confession through Gorski's hearsay testimony.

The Court agrees with Petitioner's analysis and finds that he has demonstrated cause as to why he did not raise the instant Due Process Clause claim in the direct appeal. *Murray*, 477 U.S. at 488; *see also Reed*, 468 U.S. at 14-15. Under the *Roberts* regime that

11

governed Petitioner's direct appeal, criminal law practitioners around the country followed the holdings of *Roberts* and its progeny which taught that if they encountered a reliability problem related to hearsay evidence, then they should raise a Confrontation-Clause claim. *See* Richard D. Friedman, *Confrontation: The Search for Basic Principles*, 86 Geo. L.J. 1011, 1014-16 (1998) (discussing the Confrontation Clause and the reliability analysis under *Roberts*); Andrew E. Taslitz, *What Remains of Reliability: Hearsay and Freestanding Due Process After Crawford v. Washington*, 20 Crim. Just. 39 (Summer 2005) (describing the pre-*Crawford* practice of rasing reliability challenges to hearsay statements under the Confrontation Clause as opposed to the Due Process Clause).  Under the law that existed at the time of Petitioner's direct appeal, the instant Due Process Clause argument in would have been duplicative of a Confrontation Clause argument and would have done nothing but unnecessarily multiply the proceedings.

The Sixth Circuit's opinion in this matter strongly suggests it would agree with the Court's cause analysis.  Indeed, that court plainly stated Petitioner had "*no reason*" to present his Due Process Clause claim at trial or during his direct appeal.  *Desai*, 538 F.3d at 431 (emphasis added).  This is the rare and exceptional case, occurring only after a major change in the law or in accepted practice, in which a defendant would have "no reason" to raise in his direct appeal a claim that he presented in a collateral attack on his conviction.

Building upon the Sixth Circuit's guidance, the state trial court recognized on remand that Petitioner had no "reasonable basis" to raise the instant Due Process Clause in his direct appeal.  The trial court rejected the argument that Petitioner reasonably could have advanced that claim on appeal, stating:

12

> The Prosecution contends that because a Due Process Clause claim was a "reasonable basis" for challenging the confession, but nonetheless Defendant's counsel failed to do so, and are now "bound" by the decision. However, such an analysis is unpersuasive and, countered by the rhetorical question: When is the Fourteenth Amendment not a "reasonable basis" for arguing a claim of deprivation of liberty?   Reliance on a Constitutional provision (Confrontation Clause) does not become a predicate for the foreclosure of another Constitutional provision (Due Process Clause ) merely because the former, unlike the latter, maximizes the likelihood of a meritorious  claim under the then-controlling law.

*Desai*, No. 05-74243 (E.D. Mich. October 6, 2011), ECF No. 105 Ex. B at pp. 8-9. Although the trial court applied the "good cause" standard under M.C.R. 6.508(D)(3) in finding that Petitioner was not procedurally defaulted, the undeniable logic of that court's argument applies with equal force in the application of the federal cause standard. Accordingly, the Court finds that Petitioner has satisfied his burden in establishing cause for excusing the procedural default of the Due Process Clause claim.

### 2.    Actual Prejudice

The Court next considers whether Petitioner suffered "actual prejudice" from the trial court's admission of Adams's alleged hearsay confession to Gorski.  *Murray*, 477 U.S. at 533-34.  To satisfy his burden, Petitioner must show that the error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.*, 477 U.S. at 494 (emphasis in the original) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Petitioner argues he has shown "actual prejudice" because the prosecution conceded that, given the quality of evidence and circumstantial nature of the case, without Adams's alleged confession, its case was not strong enough to survive even a preliminary examination, much less sustain a jury verdict beyond a reasonable doubt.  *Adams*, 591

N.W.2d at 50-51 n.11 (Mich. Ct. App.) (quoting testimony from prosecutor: "Q. If you could have, in your professional judgment, charged this case in 1988, would you?  A. Absolutely. Q. Why didn't you?  A. I didn't think I could get past a preliminary examination.").

Given the prosecution's concession on this point, and that Adams's alleged confession was the only direct evidence against Petitioner implicating him in the Turetzky murder, the Court finds that Petitioner has established prejudice in that his case never could have or would have come to trial without Adams's alleged confession.  The absence of Adams's alleged confession would have created a void in the proofs against Petitioner. Without the alleged confession, nothing links Petitioner and Adams and the murder of Turetzky.  Because the evidence against Petitioner was weak, the Court finds that he suffered "actual prejudice" from the admission of the confession.  Accordingly, Petitioner's procedural default is excused.

### 3.    Fundamental Miscarriage of Justice

In addition to the finding that Petitioner has demonstrated cause and prejudice to excuse his procedural default, the Court further finds that it must review the instant Due Process Claim because the failure to do so would result in a "fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750 (procedural default does not bar habeas review where failure to review claim would result in fundamental miscarriage of justice).

Here, the crucial, dispositive piece of evidence against Petitioner was exceptionally weak: it consisted only of codefendant Adams' wholly-unreliable hearsay confession. The record shows that Adams, the person whom Petitioner allegedly hired to kill Turetzky, passed a polygraph denying any involvement in the murder, and he also repeatedly denied killing Turetzky – even when under physical duress and when an admission would have led

14

to the dismissal of all charges brought against him.  Likewise, Petitioner denied any role

in the killing, even when under fire from Turetzky's son.  Accordingly, under the peculiar

circumstances of this case, the Court must review Petitioner's Due Process Clause claim

in order to prevent a fundamental miscarriage of justice.

Having resolved the procedural default issue with respect to the Due Process Clause

claim in Petitioner's favor, the Court will proceed to address the merits of that claim, as well

as his other claims, using the following standard of review.

### B.    Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas

corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question

of law or if the state court decides a case differently than [the Supreme Court] on a set of

materially indistinguishable facts."  *Lundgren*, 440 F.3d at 762-63 (quoting *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state

[-]court decision unreasonably applies the law of [the Supreme Court] to the facts of a

prisoner's case."  *Williams*, 529 U.S. at 409; *see also Pinchon v. Myers*, 615 F.3d 631, 638-

15

39 (6th Cir. 2010) (same).  An "unreasonable application" can also occur where "the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407 (citation omitted).

A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 410-11.  The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In the last two years, the Supreme Court has decided a series of cases elaborating on the scope of AEDPA deference.  *See Cullen v. Pinholster*, --- U.S. ---, 131 S.Ct. 1388, 1398 (2011); *Walker v. Martin*, --- U.S. ---, 131 S.Ct. 1120 (2011); *Harrington v. Richter*, --- U.S. ---, 131 S.Ct. 770, 787 (2011); *Premo v. Moore*, --- U.S. ---, 131 S.Ct. 733 (2011); *Renico v. Lett*, --- U.S. ---, 130 S.Ct. 1855 (2010).  Those cases highlight the AEDPA's important role as "part of the basic structure of federal[-]habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions."  *Harrington*, --- U.S. at ---, 131 S.Ct. at 787; *see also Cullen*, --- U.S. at ---, 131 S.Ct. at 1398 (holding that review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits); *Walker*, --- U.S. at ---, 131 S.Ct. at 1120 (recognizing that federal courts must carefully examine state-procedural requirements to ensure that they do not operate to discriminate against claims of federal rights); *Premo*, --- U.S. at ---, 131 S.Ct. at 733 (finding that deference to the state

16

court's prejudice determination is significant, given the uncertainty inherent in plea negotiations); *Renico*, --- U.S. ---, 130 S.Ct. at 1855 (emphasizing that the AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that they be given the benefit of the doubt).

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Harrington*, --- U.S. at ---, 131 S.Ct. at 786. Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)) (Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Moreover, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

With those standards in mind, the Court turns to Petitioner's claims.

**C.    The Due Process Clause Claim**

17

Petitioner first claims that the admission of Adams's alleged hearsay statement, through Gorski, violated his rights under the Due Process Clause and thus denied him a fundamentally fair trial.  The principal thrust of Petitioner's argument is that the inherent unreliability of Adams's alleged hearsay confession violated his rights under the Due Process Clause, and, the trial court should have excluded the confession from being admitted as evidence against him.  This Court agrees.

The Due Process Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. V.  "The [Due Process Clause] of the Fourteenth Amendment requires that action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice which lie at the base of our civil and political institutions, which not infrequently are designated as the 'law of the land.'"  *Buchalter v. New York*, 319 U.S. 427, 429 (1943) (footnote omitted). "States are free to provide greater protections in their criminal justice system than the Federal Constitution requires" but not less.  *California v. Ramos*, 463 U.S. 992, 1014 (1983).

A criminal defendant has a clearly established right to "a trial in accord with traditional and fundamental standards of due process."  *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).  "Just as '[c]onviction upon a charge not made would be sheer denial of due process,' so is it a violation of due process to convict and punish a man without evidence of his guilt."  *Thompson v. Louisville*, 362 U.S. 199, 206 (1960) (footnotes omitted).

In analyzing a Due Process Clause claim, a court considers whether the action

18

complained of so fatally infected the trial as to render it fundamentally unfair.  The Supreme Court has stated that a denial of due process in a criminal trial "is the failure to observe that fundamental fairness essential to the very concept of justice [so that] we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. California*, 314 U.S. 219, 236 (1941); *see also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (severely prejudicial evidentiary errors may violate due process and render a trial fundamentally unfair).  The principles of *Lisenba*, *Chambers*, and *Estelle* establish that trial errors cannot "defeat the ends of justice" or otherwise deprive a defendant of his or her right to a fundamentally  fair trial.

The Court acknowledges that in *Dowling v. United States*, 493 U.S. 342 (1990), the United States Supreme Court held that the Due Process Clause has limited operation and defined the category of infractions that violate fundamental fairness very narrowly.  *Id.* at 353.  When determining whether a due process violation has occurred, courts "are to determine only whether the action complained of . . . violates those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency."  *Id.* (internal quotations marks and citations omitted).  "It is well-settled that, while it is true that habeas relief cannot be granted simply on the basis of a perceived error of state law, when an error rises to the level of depriving the defendant of fundamental fairness in the trial process, the claim is remediable on a petition for habeas corpus relief."  *Turpin v. Kassulke*, 26 F.3d 1392, 1399 (6th Cir. 1994) (internal quotation marks and citation omitted).

Keeping in mind the United States Supreme Court's cases discussing the fundamental fairness in the trial process, and looking at cases discussing the reliability or

19

unreliability of evidence, for more than forty years, the decisions of the Supreme Court have made it clear that the Due Process Clause bars admission of fundamentally unreliable evidence. In *California v. Green*, 399 U.S. 149 (1970), the Supreme Court "agree[d] that considerations of due process, wholly apart from the Confrontation Clause, might prevent convictions where a reliable evidentiary basis is totally lacking." *Green*, 399 U.S. at 164 n.15 (1970) (citing *Thompson*, 362 U.S. at 206). And, in *White v. Illinois*, 502 U.S. 346 (1992), Justices Scalia and Thomas, explicitly advocating for a Due Process Clause approach to resolving hearsay reliability issues, stated that "[r]eliability is more properly a due[-]process concern." *White*, 502 U.S. at 363-64 (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment). In other words, the Due Process Clause "provide[s] criminal defendants with a protection" against the admission of hearsay evidence that may raise doubts in terms of reliability. *Id.* at 364.

The reliability requirement of the Due Process Clause becomes apparent in the Supreme Court's decisions concerning eyewitness identification testimony. In those cases, the Supreme Court has repeatedly held that the Due Process Clause requires exclusion of identification testimony procured through unduly suggestive procedures because such testimony is unreliable. *Manson*, 432 U.S. at 114 (stressing that reliability is the "linchpin" of due-process analysis); *Neil v. Biggers*, 409 U.S. 188, 197-201 (1972) (finding reliability important in identification procedures)*; Foster v. California*, 394 U.S. 440, 442 (1969) (actually finding the identification procedures to be a violation of due process); *Simmons v. United States*, 390 U.S. 377, 384 (1968) (finding that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic

20

identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification); *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967) (holding that the procedure was suggestive to irreparable mistaken identification that defendant was denied due process of law).

The Supreme Court confirmed its earlier holdings that the Due Process Clause plays an important role in the exclusion of unreliable evidence in *Michigan v. Bryant*, -- U.S. ---, ---, 131 S.Ct. 1143, 1162 n.13 (2011) (citations omitted), stating:

> Of course the Confrontation Clause is not the only bar to admissibility of hearsay statements at trial. State and federal rules of evidence prohibit the introduction of hearsay, subject to exceptions. Consistent with those rules, the Due Process Clauses of the Fifth and Fourteenth Amendments may constitute a further bar to admission of, for example, unreliable evidence.

*See also Dutton v. Evans*, 400 U.S. 74, 98 (1970) (Harlan, J., concurring in result) (admission of evidence may amount to a due-process violation if it is clearly prejudicial and rendered a trial fundamentally unfair). The Supreme Court has also recognized that "erroneous evidentiary rulings can . . . rise to the level of a due process violation." *Montana v. Egelhoff*, 518 U.S. 37, 53 (1996); *see also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) ("When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." (citations omitted)); *Parle v. Runnels*, 505 F.3d 922 (9th Cir. 2007) (granting habeas relief where the state court's admission of "egregiously unreliable" other-acts evidence "rendered [the petitioner's] defense 'far less persuasive than it might have been'" and thus "deprived Petitioner of a fair trial") (quoting *Chambers*, 410 U.S. at 294)*; Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002), *cert. denied*, 538 U.S. 994 (2003) (improper admission of evidence can amount to a due process violation if it "is clearly prejudicial and 'rendered the trial fundamentally

21

unfair'"); *Peterkin v. Horn*, 176 F. Supp. 2d 342 (E.D. Pa. 2001) (granting habeas relief where the admission of other-acts evidence violated the petitioner's "constitutional right to a fair trial"); *Gumm v. Mitchell*, 2011 WL 1237572 (S.D. Ohio Mar. 29, 2011) (granting habeas relief based upon the state court's admission of "egregiously unreliable" other-acts evidence "deprived Petitioner of a fair trial").   "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) (citing *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000) (citations omitted)).

As for Petitioner's Due Process Clause claim in this case, the Court concludes that the Supreme Court's clearly-established, due process jurisprudence required the exclusion of Adam's confession because the alleged hearsay statement was patently unreliable and its admission resulted in a fundamentally unfair trial.   The Michigan Court of Appeals' decision holding otherwise was contrary to, or an unreasonable application of, established Supreme Court precedent, and was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings.

The record in this case compels the conclusion that Adams's alleged hearsay confession was entirely unreliable.[2]  First, Petitioner was prevented from cross-examining Adams, because Adams did not testify at trial.  Thus, Petitioner was unable to expose to the jury the unreliability of the alleged confession.  Second, the setting in which the alleged

---

[2]  The Court notes that the Sixth Circuit never explicitly disagreed with its conclusion in its prior decision, *Desai I*, that the hearsay evidence in this case was factually unreliable.

confession took place is problematic; a confession to a killing in the men's bathroom, where each man was in a separate stall, conversing through a tiny crack between the wall and the divider shared by the two adjoining stalls, where there were ever-present noises and sounds of the bar atmosphere, and where other patrons were presumably shuffling in and out of the bathroom, is not a setting that induces truthfulness. Those circumstances make it questionable that Adams, possibly under the influence of alcohol and other drugs, is going to confess to a gruesome murder to someone he cannot see and where others are likely to be around. Third, Adams passed a polygraph examination denying the murder, denied ever confessing to Gorski, and refused to confess even when threatened with physical violence and when the prosecutor offered to dismiss the charges against him if he confessed and testified against Petitioner. Given that Petitioner's conviction indisputably rests on Adam's hearsay confession, without which he would not even have been charged, the admission of such unreliable and unfairly prejudicial evidence is a violation of the Due Process Clause that warrants habeas relief.

What makes the Due Process Clause violation so clear in this case is that Petitioner never had an opportunity to challenge Adams's alleged confession through the traditional reliability-testing tools usually available to a criminal defendant. *See Perry v. New Hampshire*, --- U.S.---, ---, 132 S.Ct. 716 (2012). In *Perry*, the Supreme Court held that the admission of allegedly unreliable identification testimony did not violate the defendant's due process right because the defendant was able to test the reliability of the identification testimony before the jury: "Given the safeguards generally applicable in criminal cases, protections availed of by the defense in Perry's case, we hold that the introduction of . . . eyewitness testimony, without a preliminary assessment of reliability, did not render Perry's

trial fundamentally unfair." *Id.*, --- U.S. at ---, 132 S.Ct. at 730. The "safeguards" referred

to by the Supreme Court, i.e., the tools that are used to test reliability, include the right to

compulsory process and to confront and cross-examine witnesses. *Id.*

Unlike the defendant in *Perry*, Petitioner in this case did not have the ability to test

the reliability of Adams's alleged confession through the full array of "safeguards." Because

the prosecution waited to file charges against Adams and Petitioner jointly, rather than

trying Adams years earlier when it first heard Gorski's account of the confession, Petitioner

neither could compel Adams to testify nor could he cross-examine Adams concerning the

content of the alleged confession. Without those two critical "safeguards," Petitioner was

not able to expose to the jury the unreliability of the alleged confession, through, for

instance, testimony from Adams denying any role in the murder, denying that he made the

alleged confession, and denying that he met with Gorski as Gorski claimed. Because

Petitioner could not test the reliability of his codefendant's alleged confession before the

jury, the Due Process Clause required exclusion of the unreliable and unfair confession.

The obvious unreliability of Adam's hearsay confession is confirmed by the Supreme

Court's finding in *Lee v. Illinois*, 476 U.S. 530 (1986), which stated that codefendant

confessions are presumptively unreliable and should not be admitted as evidence of a

defendant's guilt:

> [A] codefendant's confession is presumptively unreliable as to the passages
> detailing the defendant's conduct or culpability because those passages may
> well be the product of the codefendant's desire to shift or spread blame, curry
> favor, avenge himself, or divert attention to another. If those portions of the
> codefendant's purportedly "interlocking" statement which bear to any
> significant degree on the defendant's participation in the crime are not
> thoroughly substantiated by the defendant's own confession, the admission
> of the statement poses too serious a threat to the accuracy of the verdict to
> be countenanced by the Sixth Amendment. In other words, when the

discrepancies between the statements are not insignificant, the codefendant's confession may not be admitted.

*Id.* at 545; *see also Gray v. Maryland*, 523 U.S. 185, 194-95 (1998) (Scalia, J., dissenting) (stating that co-defendant's confessions "may not be considered for the purpose of determining [the defendant's] guilt"); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) ("[W]here two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand.").

In assessing Gorski's statements regarding codefendant Adams's alleged hearsay confession, it is clear that Gorski had an incentive to fabricate a diversion, because he was an actual suspect in the Turetzky murder by way of his relationship with Adams and the knowledge that he had regarding the money transfers with respect to the businesses. Thus, he had reason to shift the attention away from himself as a potential killer and save his own life. Further, when initially questioned by the police, he failed to inform them of Adams's alleged confession and he could not pinpoint the time or date of the confession. The Court notes that the Michigan Court of Appeals ignored the *Lee* presumption in reaching its conclusion that Adam's confession was "sufficiently trustworthy and reliable." *Desai*, 2010 WL 3385988 at *13. This presumption, coupled with Petitioner's inability to test the veracity of that Adam's alleged hearsay confession through cross-examination, further supports the finding that Adam's statement is entirely unreliable and should have been excluded at trial.

Moreover, the Michigan Court of Appeals overlooked the following key aspects of the record as they relate to the reliability of Adam's hearsay confession: (1) the alleged confession was inconsistent with the testimony of the medical examiner in that Adams

25

claimed to have strangled Turetzky with a ligature when the examiner testified that ligature strangulation was not the cause of death; (2) Gorski's relationship with Adams was not that of an intimate friendship but rather, Gorski was friends with Adams through Adams's brother; (3) Adams's statement that Turetzky went to a motel room to meet Petitioner makes no sense because of their ongoing conflict; (4) Gorski did testify that it was a fair assumption that it was loud in the bathroom and that Adams was either drunk or high at the time that he confessed to him; (5) it was Gorski's idea to have a private conversation not Adams's idea; (6) the Court of Appeals minimized the fact that Adams passed a polygraph examination and ignored the evidence that Gorski failed the polygraph on the key issues; (7) the Court of Appeals said Adams's denial that he killed Turetzky was entitled to little weight because "prisons are filled with criminal defendants who continue to deny their involvement in criminal activity, *Desai*, 2010 WL 3385988, at *8, however, an admission by Adams would have set him free because the prosecution agreed to dismiss the charges if he admitted his role and testified against Petitioner and; (8) the Court of Appeals ignored the prosecution's admission that, given the quality of evidence and circumstantial nature of the case, without Adams's alleged confession, its case was not strong enough to survive even a preliminary examination.

Additionally, *Ege*, *supra*, a Sixth Circuit case with striking parallels to this one, supports the Court's Due Process analysis. *See Goodell v. Williams*, 643 F.3d 490, 496 (6th Cir. 2011) (a federal court on habeas review may "look to lower courts of appeals' decisions to the extent they illuminate the analysis of Supreme Court holdings in determining whether a legal principle had been clearly established by the Supreme Court."). The prosecution in *Ege* filed charges only after obtaining a bite-mark analysis in which an

"expert" opined that the odds that a bite mark found on the victim came from Ege were more than 3.5 million to one.  The prosecution highlighted the bite-mark evidence at trial, and Ege was convicted.  Subsequent scientific analysis revealed that the bite-mark testimony lacked any reasonable foundation and was entirely untrustworthy.  On collateral review, the state courts held that the bite-mark evidence was wrongly admitted but held that the error did not rise to the level of a due process violation.  However, Judge David M. Lawson, a judge in this district court, granted Ege habeas relief because the bite-mark evidence was critical to the prosecution's case, and the admission of that critical-yet-unreliable-and-unfair evidence "violate[d] fundamental concepts of justice" under the Due-Process Clause.  *Ege v. Yukins*, 380 F.Supp.2d 852, 880-81 (E.D. Mich. 2005), *rev'd on other grounds*, *Ege v. Yukins*, 485 F.3d 380 (6th Cir. 2007).

The Sixth Circuit affirmed that part of Judge Lawson's decision.  *Ege*, 485 F.3d at 380.  It stressed that "the prosecution was not willing to try Ege until it had [the] bite mark testimony, indicating its desire to have in hand the one piece of physical evidence potentially linking Ege to the crime."  *Id.* at 377.  The Sixth Circuit noted:

> [W]hile the State may have had a good circumstantial case against Ege in 1984, it was not until 1993, when the State finally obtained expert physical evidence connecting Ege to the murder victim, that it felt comfortable moving forward with Ege's prosecution.  If the prosecution felt that the bite[-]mark evidence was so important, it does not take much of a cognitive leap to believe that the jury viewed it as important as well.

*Id.*  The Sixth Circuit thus held that the bite-mark testimony was a "crucial, critical highly significant factor," because "[i]t is not unreasonable to conclude . . . that this single piece of physical evidence substantially prejudiced the outcome of Ege's trial, even in light of other circumstantial evidence against her."  *Id.* at 377-78.  Thus, the Sixth Circuit concluded

27

that the admission of the unfair and unreliable bite-mark testimony violated Ege's due process rights and warranted habeas relief. *Id.* at 380.

Here, as in *Ege*, the Supreme Court's clearly-established due process rules required the exclusion of the admission of Adams's alleged hearsay evidence because there was no permissible inference the jury could draw from the evidence, other than Petitioner was guilty, and the evidence was of such quality as necessarily prevented him from securing a fair trial. Indeed, Adams's unreliable and unfair alleged hearsay confession played the precise role in this case that the unreliable and unfair bite mark evidence played in *Ege*: it was essential to the filing of the charges and, thus, obviously made the difference between conviction and acquittal. Relatedly, the Court further finds that the admission of Adams's confession was not harmless error. The purported "bathroom-stall confession" was the single, dispositive piece of direct evidence against Petitioner and its admission had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Therefore, the Court concludes that the Court of Appeals' decision with respect to Petitioner's Due Process Clause claim was unreasonable under the limited facts of this case. When the crucial, dispositive piece of direct evidence is fundamentally unreliable, such as Adams's alleged hearsay confession here, and where a petitioner does not have a full opportunity to expose that unreliability because he or she cannot cross-examine the declarant of the source of evidence, such as here where Petitioner was unable to cross-examine codefendant Adams through no fault of his own, the Due-Process Clause requires exclusion of that unreliable evidence. "The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur–reflecting as it does the belief that the

'finality' of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right–is not one that can be so lightly abjured."  *Jackson*, 443 U.S. at 323.  The Court finds that constitutional error did occur in the courts of this state, with respect to Petitioner's Due-Process-Clause claim.  Accordingly, Petitioner is entitled to habeas relief.

Although the Court finds Petitioner is entitled to relief on this claim, in interest of creating a complete record, the Court will address Petitioner's remaining claims.

### D.    The Right to Present a Defense Claim

Petitioner asserts that the state court trial judge deprived him of his right to present a defense by ruling that the preliminary-examination testimony of Oscar Trendov was inadmissible.[3]  The Court disagrees.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense.  This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky*, 476 U.S. 683,

_____

[3]Petitioner claims that this testimony would establish that someone else murdered Turetzky and would undermine a testifying police officer's credibility.  The trial court, having reviewed the transcript, excluded the evidence for the following reason:

> If it's confusing, parts of it unintelligible–I understand that you said that the parts that were unintelligible were later corrected by one lawyer or both– one lawyer or another.  I think it's confusing, like I said. I've been doing this for a long time and it was confusing to me.  And I think the key, you said yourself, for those of thus that were there.  But you're asking for a full transcript to be submitted as a piece of evidence and I'm telling you, I could not follow it.  I'm not going to further confuse the fact finders in this case by admitting that.

Trial Tr., Oct. 9, 2001., ECF No. 66 at pp. 138-39.

690 (1986) ("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (internal citations omitted).  However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence.  *Egelhoff*, 518 U.S. at 42.  The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane*, 476 U.S. at 689.  The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues.  *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"  *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Under the standard of review for habeas cases as enunciated in section 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect.  Rather, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent."  *Rockwell v. Yukins*, 341 F.3d 507, 511-12 (6th Cir. 2003).

In analyzing this claim, the Court of Appeals concluded that the trial court did not abuse its discretion in excluding the evidence because its probative value was outweighed

by the danger of confusing or misleading the jury:

> Here, the trial court denied the admission of the contested testimony after concluding that the record was very confusing, that the court could not follow the testimony, that parts of the record were unintelligible, and that its admission would further confuse the jury.  After considerable review of the testimony, we agree with the trial court.  Defendant's claims that this testimony would tend to establish that someone else murdered Turetzky and that this testimony would undermine a testifying police officer's credibility are exaggerated.  Review of the transcript reveals little, if any, substantive information.  The testimony was very confusing, ambiguous, at times contradictory, and extremely difficult to follow. Further, its probative value is minimal at best, establishing little except that one or two vehicles may have been in the parking lot of this public place, a hotel, during the time frame in which Turetzky's vehicle was parked there.  Accordingly, the trial court did not abuse its discretion when it precluded its admission under MRE 403 on the ground that its probative value was substantially outweighed by the danger of confusing or misleading the jury.

*Desai*, 2003 WL 22515292, at *5.

At the close of evidence, Petitioner moved for the introduction of the entire transcript of Trendov's preliminary-examination testimony.  Although the court reporter had prepared a transcript of his testimony, she could not understand many of his answers to questions because he had lost the use of his voice box and utilized a vibrating device to speak.  The parties had obtained a copy of that transcript before presenting arguments at the conclusion of the preliminary examination.  They then stipulated that the district court would not consider Trendov's testimony in making its decision.  Trendov, however, later died, rendering him unavailable at trial.  The trial court reviewed the transcript and excluded the evidence because it was confusing and unintelligible and it believed that it would confuse the jurors.  The Court of Appeals agreed and found that the record supported the trial court's determination that the danger of confusion justified exclusion of the evidence.

Factual determinations made by the state court are presumed correct.  28 U.S.C.

31

§ 2254(e)(1).   Here, Petitioner has failed to establish that those factual findings are incorrect with clear and convincing evidence.   Because Petitioner has failed to overcome the state court's factual findings with respect to the substance of Trendov's testimony, this Court must presume that the evidence was contradictory, ambiguous, difficult to follow, and confusing, and thus, properly excluded.

Based on the foregoing, the Court finds that the Court of Appeals' rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Habeas relief is not warranted on this claim.


### E.      The Preindictment Delay Claim

Petitioner next argues that his due-process rights were violated by the prosecutor's delay in bringing charges, since the offense occurred in November 1983 and he was not charged until 1995.   This preindictment delay claim lacks merit under the circumstances of this case.

In 1997, the state court granted Petitioner's pretrial motion to dismiss charges based on preindictment delay.   The court found that Petitioner was prejudiced by the death of seven of the witnesses, the three missing witnesses, and the lost or destroyed evidence. It also found that the prosecution intentionally delayed the investigation in order to gain a legal tactical advantage; because there was a change in the law which allowed the prosecution to use Adams's alleged statement against Petitioner as well as himself, there was a tactical advantage of trying both together.   *See* Ruling of the Court, Mar. 21, 1997, ECF No. 33 at pp. 2-8.

32

Petitioner appealed the decision to the Michigan Court of Appeals, which reversed the trial court's decision. Petitioner contends that the Court of Appeals' ruling misapplies federal law. However, the Supreme Court has held consistently that "[t]here is no constitutional right to be arrested." *Hoffa v. United States*, 385 U.S. 293, 310 (1966). Elaborating on that concept, the *Hoffa* Court explained:

> The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.

*Id.*

The Due Process Clause does provide some measure of protection against preindictment delay. *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *see also United States v. Marion*, 404 U.S. 307, 324 (1971) (same). But the Supreme Court has observed that "no one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so." *Lovasco*, 431 U.S. at 792. Proof of prejudice is a necessary element of a due-process claim for preindictment delay. *Id.* at 790. The Sixth Circuit has consistently read *Lovasco* to hold that dismissal for preindictment delay is warranted only when the defendant shows both substantial prejudice to his or her right to a fair trial and that the delay was intentionally imposed by the government to gain a tactical advantage. *See United States v. Brown*, 959 F.2d 63, 66 (6th

33

Cir. 1992) (citation omitted).[4]  The prosecution of a defendant following an investigative delay does not necessarily deprive him of due process, even if his defense is somewhat prejudiced by the lapse of time.  *Lovasco*, 431 U.S. at 796.

Here, Petitioner contends that the delay was intentional or used by the prosecution to gain a tactical advantage.  He argues that the delay caused him substantial prejudice. However, prejudice does not result automatically from long periods of delay alone.  *Brown*, 959 F.2d at 67 (citing cases in which preindictment delay was thirty-three months, twenty-nine months, and five years).  In addressing this claim, Court of Appeals, citing both *Lovasco* and *Marion*, the seminal cases with respect to this claim, stated:

> In the instant case, we conclude that [Petitioner has] not demonstrated the requisite actual and substantial prejudice necessary to satisfy the first prong of the . . .  test to thereby shift the burden of persuasion to the prosecution to show the reasonableness of the delay.  [Petitioner has] made no showing that any of these witnesses would have provided relevant information beneficial to [his] defense.  Although [Petitioner] contend[s] in general terms that [he has] been deprived of the opportunity to cross-examine the unavailable witnesses, [he has] neither specified the substance of that cross-examination testimony nor offered anything more than mere speculation concerning the exculpatory nature of such testimony. Indeed, if any party has been detrimentally affected by the unavailability of these witnesses, it is the prosecution, not [Petitioner].  The unavailable

---

[4]Every circuit, other than the Fourth and the Ninth Circuits, has held that, in order to establish that a lengthy preindictment delay rises to the level of a due process violation, a defendant must show not only actual substantial prejudice, but also that "the government intentionally delayed the indictment to gain an unfair tactical advantage or for other bad faith motives."  *United States v. Crooks*, 766 F.2d 7, 11 (1st Cir. 1985 ) (internal quotation marks and citation omitted), *cert. denied*, 474 U.S. 996 (1985); *United States v. Hoo*, 825 F.2d 667, 671 (2d Cir. 1987), *cert. denied*, 484 U.S. 1035 (1988); *United States v. Ismaili*, 828 F.2d 153, 167 (3d Cir. 1987), *cert. denied*, 485 U.S. 935 (1988); *United States v. Crouch*, 84 F.3d 1497 (5th Cir. 1996); *United States v. Sowa*, 34 F.3d 447, 450 (7th Cir. 1994), *cert. denied*, 513 U.S. 1117 (1995); *United States v. Stierwalt*, 16 F.3d 282, 285 (8th Cir. 1994); *United States v. Engstrom*, 965 F.2d 836, 839 (10th Cir. 1992); *United States v. Hayes*, 40 F.3d 362, 365 (11th Cir. 1994), *cert. denied*, 516 U.S. 812 (1995).

individuals were prosecution witnesses who, it is reasonable to surmise, would have provided information valuable to the prosecution. Consequently, the prosecution must move forward without the benefit of this testimonial evidence.

[Petitioner has] likewise failed to show actual and substantial prejudice by reason of the missing physical evidence. [He] contend[s] that the loss of the physical evidence has denied [him] the opportunity to conduct testing, such as fingerprint analysis, to determine whether the evidence may have been exculpatory. However, this argument, too, rests upon speculation. [Petitioner has] not substantiated the potentially exculpatory aspects of this physical evidence, for instance, by delving into the substance of the missing tape-recorded conversations or explaining how the loss of the tissue paper and *Anarchist's Cookbook,* incriminatory in nature, prejudiced [his] defense. In fact, testimony adduced during the evidentiary hearing held below indicated that the missing evidence was the prosecution's loss and [Petitioner's] gain, given that the prosecution's case rested in large part on this lost evidence. [Petitioner's] vague claim of prejudice therefore fall short of the requisite proof.

*Desai*, 591 N.W.2d at 48-49 (Mich. Ct. App.) (footnotes omitted).

The Court concludes that the Court of Appeals's decision was reasonable and not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

However, even if the Court were to assume the existence of actual and substantial prejudice, Petitioner's claim fails because he has not shown that prosecutor's proffered reasons for the delay did not justify the alleged resultant prejudice. Despite Petitioner's claim that the prosecutor delayed charging him to gain a tactical advantage, the record shows the contrary, that legitimate investigatory and burden of proof concerns motivated the delay and that it was the prosecution who stood the most to lose by the delay.

The Court of Appeals, in discussing this part of Petitioner's claim noted that, at the state court evidentiary hearing in 1996, Assistant Prosecuting Attorney Nancy Alberts explained that a number of factors contributed to Respondent's decision not to charge

Petitioner sooner. The Court of Appeals stated:

> Alberts'[s] testimony clearly underscores that investigative rather than tactical concerns governed the prosecution's course of action. The investigation took many twists and turns during the years following Turetzky's murder. As noted above, key witnesses died and evidence became unavailable. In 1984, a federal grand jury convened to investigate an unrelated matter involving defendant Desai, and more evidence was allegedly garnered pertaining to this investigation. Adams and the key witness, Gorski, disappeared and were eventually located outside Michigan. Gorski failed to appear for a polygraph examination, and Adams, who did take a polygraph, appeared to have "passed" the examination. Finally, in 1994, a one-man grand jury was appointed to investigate unsolved murders in the city of Detroit, including the murder in this case. Both defendants were subpoenaed to appear before the grand juror and, on the basis of the cumulative evidence gathered from this investigation and the intervening years of investigation, defendants were finally charged with crimes arising out of the death of Turetzky. On the record, we find no deliberate tactical delay by the prosecution and hold that the trial court clearly erred in its finding to the contrary.

*Desai*, 591 N.W.2d at 51 (Mich. Ct. App.) (footnotes omitted).

The Court of Appeals's conclusion that there was no deliberate tactical delay by the prosecution is a factual finding presumed to be correct under 28 U.S.C. § 2254(e)(1) and Petitioner has failed to meet the high burden of rebutting it with clear and convincing evidence. Thus, he is not entitled to relief on this claim.

### F.    The Cumulative Error Claim

In his next habeas claim, Petitioner alleges that the cumulative effect of the above alleged errors denied him a fundamentally fair trial in contravention of the Due Process Clause. The Court finds this claim meritless.

The Sixth Circuit has consistently and explicitly held that a habeas petitioner cannot premise relief on a claim of cumulative-trial error. *See*, e.g., *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative[-]error claims are

36

not cognizable on habeas because the Supreme Court has not spoken on this issue."); *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) ("[W]e have held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) (death penalty decision noting that "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"). Accordingly, Petitioner's is not entitled to habeas relief with respect to this cumulative error claim.

### G.    The AEDPA is Unconstitutional Claim

In his final claim, Petitioner lodges a two-sentence argument that the AEDPA is unconstitutional because it violated the separation of powers doctrine and the Supremacy Clause and, therefore, it should not be applied to his claims of constitutional error. Respondent argues that the claim is without merit. The Court agrees with Respondent.

This argument was rejected by this Court in *Robinson v. Davis*, No. 2:06-CV-11324, 2009 WL 307507 (E.D. Mich. Feb. 6, 2009). In that case, with respect to the separation of powers argument, the Court stated:

> In amending section 2254(d)(1), Congress has simply adopted a choice of law rule that prospectively governs classes of *habeas* cases; it has not subjected final judgments to revision, nor has it dictated the judiciary's interpretation of governing law and mandated a particular result in any pending case. And amended section 2254(d) does not limit any inferior federal court's independent interpretive authority to determine the meaning of federal law in any Article III case or controversy. Under the AEDPA, we are free, if we choose, to decide whether a *habeas* petitioner's conviction and sentence violate any constitutional rights. Section 2254(d) only places an additional restriction upon the scope of the *habeas* remedy in certain circumstances.

*Id.* at 17 (emphasis in the original) (citing *Green v. French*, 143 F.3d 865, 874-75 (4th Cir. 1998), *abrogated on other grounds by Williams*, 529 U.S. at 362). The Court further found

that "Section 2254(d) merely limits the source of clearly established law that the Article III court may consider, and that limitation served to govern prospectively [a] class of habeas cases rather than offend the court's authority to interpret the governing law and to determine the outcome in any pending case." *Robinson*, 2009 WL 307507, at *17 (citing *Duhaime v. Ducharme*, 200 F.3d 597, 601 (9th Cir. 2000)); *see also Evans v. Thompson*, 518 F.3d 1, 4-10 (1st Cir. 2008) (same).

With respect to Petitioner's second argument that the AEDPA standard violates the Supremacy Clause of the United States Constitution, the Court in *Robinson* found that the claim had no merit, stating:

> Nothing in the AEDPA subjugates the Constitution to state law. As the Supreme Court has often noted, the state courts, as co-equal guardians of federal constitutional rights, are perfectly capable of passing on federal constitutional questions. And under the Supremacy Clause, state courts are obligated to enforce the Constitution above state law to the contrary. Nothing in the AEDPA changes this rule of law. The AEDPA does, to be sure, require that federal courts give deference to the federal constitutional decisions of the state courts. This, however, does not offend the Supremacy Clause, which "is concerned with promoting the supremacy of federal law, not federal courts." In short, the AEDPA standard of review does not violate the Supremacy Clause because that Clause "is concerned about a conflict between state and federal law, not between state and federal judges. Indeed, to say, as the Clause does, that federal law shall be 'Supreme . . . any thing in the Constitution or laws of any State to the Contrary notwithstanding' is to say nothing at all about the respective roles of the state and federal courts."

*Robinson*, 2009 WL 307507, at *18 (citing *Byrd v. Trombley*, 580 F. Supp. 2d 542, 551-52 (E.D. Mich. Sept.18, 2008) (internal citations omitted)).

For the reasons stated in the *Robinson* decision, the Court does not find section 2254(d)(1) to be a violation of the Supremacy Clause, and Petitioner is not entitled to habeas relief with respect to this claim.

## IV.   CONCLUSION

For the reasons stated, the Court finds that the trial court violated Petitioner's constitutional rights by allowing in evidence the alleged hearsay statements of codefendant Adams, through Gorski, which incriminated Petitioner. Therefore, the Court concludes that the decision of the Michigan Court of Appeals concluding otherwise was contrary to, or an unreasonable application of, established Supreme Court precedent, and was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. This constitutional error had a substantial and injurious effect on the jury's verdict. Accordingly, it is **ORDERED** that a writ of habeas corpus is **CONDITIONALLY GRANTED** with respect to this claim. It is further **ORDERED** that Respondent shall release Petitioner from custody unless the State brings him to trial within ninety days.

It is further **ORDERED** that Petitioner is **DENIED** habeas relief with respect to his remaining claims. The Court will also deny a certificate of appealability to Petitioner with respect to those claims.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when

39

it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.  For the reasons stated in this opinion in regard to those claims, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.

**IT IS SO ORDERED.**

s/Marianne O. Battani

MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: July 31, 2012

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

s/Bernadette M. Thebolt
Case Manager